ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| DAVID FIGUEROA<br><br>Apelante<br><br>v.<br><br>SANTA REAL REALTY, INC. D/B/A LAGUNA GARDENS SHOPPING CENTER; YAT SING CREAM RESTAURANT, INC.; SUPERMERCADOS MÁXIMO, INC.; FULANOS DE TAL 1-100<br><br>Apelados | KLAN202301113 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm.: CA2021CV01203<br><br><br>Sobre: Petición de Orden Daños |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente.*

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de enero de 2024.

Comparece el señor David Figueroa Betancourt (en adelante, apelante y/o señor Figueroa Betancourt), mediante un *Recurso de Apelación* para solicitarnos la revisión de la *Sentencia Parcial Final* emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina (en adelante, TPI) el 2 de octubre de 2023, notificada el 4 de octubre de 2023.[1] Mediante la *Sentencia Parcial Final* apelada, el tribunal *a quo* desestimó la *Demanda,* con perjuicio en cuanto a la parte apelada Supermercados Máximo, Inc. (en adelante, parte apelada y/o SuperMax).

Por los fundamentos que expondremos, se *confirma* la *Sentencia Parcial Final* apelada.

**I**

El 18 de mayo de 2021, el señor Figueroa Betancourt presentó una *Demanda* intitulada *Petición de Orden de Interdicto*

---

[1] Apéndice del apelante, a las págs. 327-331.

Número Identificador

SEN2024_____

*Permanente,*[2] al amparo de 42 USC § 12188.[3] Adujo, que los codemandados Santa Real Realty INC, D/B/A Laguna Garden Shopping Center, Yat Sing Cream Restaurant, Inc., SuperMax, Salom, Inc., Fulanos De tal 1-100 incumplen con las disposiciones del Título III de la ley federal conocida como American with Disabilites Act, 42 USC § 12181 *et seq* (en adelante, Ley ADA). A tenor, solicitó que se emitiera un interdicto permanente, daños nominales, daños compensatorios y otros remedios al amparo de la Sección 504 del Rehabilitation Act, 29 USCA § 794.[4]

Según se desprende de la *Demanda,* el señor Figueroa Betancourt alegó que sufre de una discapacidad física,[5] que le limita sustancialmente actividades cotidianas o del diario vivir. Durante el trámite del presente caso el foro primario ha emitido tres (3) Sentencias Parciales en torno a otros codemandados de epígrafe.[6] Conviene señalar que, la acción contra la parte apelada de autos era la única que quedaba pendiente de adjudicar.

En lo atinente al asunto objeto de revisión, el señor Figueroa Betancourt alegó en la *Demanda,* la presencia de barreras arquitectónicas en SuperMax, el cual radica en el Centro Comercial Laguna Gardens en Carolina. El apelante indicó que visitó el establecimiento el 17 de mayo de 2021. El señor Figueroa Betancourt solicitó como remedio: (i) que se emitiera una Sentencia Declaratoria disponiendo que la parte apelada ha violado los requisitos del Título III de la Ley ADA y la reglamentación de

---

[2] *Id,* a las págs. 1-34.
[3] 42 USC § 12188.
[4] 29 USCA § 794 fue limitado por motivos constitucionales por *Reickenbacker v. Foster,* 274 F.3d 974 (2001).
[5] El señor Figueroa Betancourt refirió en la *Demanda,* que es cuadripléjico o que padece de tetraplejia, que conforme expresó, es una lesión en la médula espinal en la que el paciente puede sufrir una parálisis.
[6] Véase, Sistema Unificado de Manejo y Administración de Casos (SUMAC) a las entradas 40, 78 y 126. En cuanto a Shalom Inc., se emitió una Sentencia Parcial de desistimiento sin perjuicio, mientras que contra Santa Real Inc. D/B/A Laguna Gardens Shopping Center se emitió una Sentencia Parcial de desistimiento con perjuicio. Por otro lado, contra X&Z Corporation, H/N/C Yat Sing Restaurante se emitió una Sentencia Parcial de desestimación, con perjuicio.

implementación relevante de la Ley ADA; y, que la propiedad no es completamente accesible y utilizable de manera independiente para personas con movilidad limitada como la parte apelante; (ii) un interdicto permanente de conformidad al 42 USC § 12188 (a)(2) y 28 CFR § 36.504(a) que ordenara a la parte apelada a eliminar las barreras arquitectónicas descritas en la *Demanda* y para que las instalaciones cumpliesen con los requisitos establecidos por la Ley ADA y sus reglamentos de implementación, para que las instalaciones estén totalmente accesibles a, y de forma independiente, por personas de movilidad limitadas; (iii) una orden reteniendo jurisdicción sobre el asunto y la designación de un monitor por un periodo de cinco (5) años para supervisar que la parte apelada cumpla con los requisitos relevantes de la Ley ADA y para asegurarse de que haya adoptado y siga una política institucional para que se cumpla con la ley; (iv) que de continuar con la con la presunta condición discriminatoria, se ordenara el cierre y clausura de la propiedad como medida para detener la condición discriminatoria hasta que se acreditara haber eliminado el discrimen; (v) daños compensatorios al amparo de la Rehabilitation Act; (vi) daños nominales al amparo de la Rehabilitation Act y la Ley ADA; (vii) el pago de los costos del litigio, al amparo del 42 USC § 12205; y, (viii) el pago de honorarios de abogados, al amparo de 42 USC § 12205 y 28 CFR § 36505.

En lo pertinente, el 29 de septiembre de 2021, la parte apelada presentó la *Contestación a Petición de Interdicto Permanente*.[7] Negó que, en SuperMax hubiese barreras ilegales que requirieran su remoción, así como que también negó que hubiese violado la Ley ADA. Adujo que, cualquier violación potencial a la Ley ADA había sido corregida o se encontraban en el proceso de ser corregida.

---

[7] Apéndice del apelante, a las págs. 35-52.

Alegaron que, los cambios y acomodos que solicita el apelante no son fácilmente alcanzables ni estructuralmente factibles, y resultarían en una carga indebida para la parte apelada bajo la Ley ADA. La parte apelada solicitó como remedio la desestimación de la *Demanda* incoada con perjuicio, así como el pago de costas, gastos y honorarios de abogado a SuperMax.

El 8 de diciembre de 2022, SuperMax presentó *una Moción de Sentencia Sumaria Parcial.*[8] La parte apelada hace referencia a que, en la *Demanda,* el apelante adujo que las góndolas, pasillos, filas o caminos de SuperMax no tenían un espacio de al menos treinta y seis (36) pulgadas. Además, de que el mostrador de servicio al cliente era muy alto, impidiendo la comunicación con el empleado; y, que las medidas de los baños no cumplían con la Ley ADA. A esos efectos, alegaron que SuperMax hizo renovaciones que consistieron en la remodelación de los baños, colocar rampas de acceso y el arreglo de los mostradores, tornándose la reclamación en académica y procediendo su desestimación. Explicaron que, comenzaron a ocupar el local localizado en el Centro Comercial de Laguna Gardens para el año 2009. Respecto a las modificaciones al mostrador de servicio, indicaron que colocaron una mesa frente a este que tiene un timbre y un rotulo, lo cual les permite a las personas en sillas de ruedas tener igual acceso a los servicios, constituyendo una facilidad equivalente en cumplimiento con la Ley ADA. Además, indicaron que colocaron mostradores con rótulos y timbres en las áreas de açai, carnicería y repostería en cumplimiento con la ley. A tales efectos, solicitaron que se dictara sentencia sumaria desestimando la causa de acción instada al amparo de la Ley ADA, tras juzgar que era académica y que se denegara la concesión de honorarios de abogado. Expusieron que el apelante no tenía derecho

---

[8] *Id,* a las págs. 53-92.

a honorarios de abogado, ya que SuperMax removió las alegadas barreras voluntariamente antes de instarse el pleito en cuestión, y por consiguiente el señor Figueroa Betancourt no era la parte prevaleciente en el caso.

Por su parte, el 19 de enero de 2023, el señor Figueroa Betancourt presentó su *Oposición a Moción de Sentencia Sumaria Parcial.*[9] Referente a la acción tomada por SuperMax respecto a los mostradores, el apelante explicó que no le parece una medida accesible ni igualitaria, sino una medida marginal que podría ser movida y trasladada de lugar en cualquier momento. Abundó que, en dicha mesa no hay ningún empleado, que este tendría que llamar por el timbre y esperar que un empleado se acerque a él.

Así, las cosas, el 24 de enero de 2023, el señor Figueroa Betancourt presentó una *Moción Informativa para Someter Documento.*[10] Como anejo sometió una *Declaración Jurada Sujeta a Pena de Perjurio.*[11] Declaró que, debido a su discapacidad física utiliza una silla de ruedas motorizada desde el 1990.

Además, 10 de febrero de 2023, SuperMax presentó *Réplica a Oposición a Moción de Sentencia Parcial.*[12] Expusieron que, la Declaración Jurada suscrita por el señor Figueroa Betancourt no controvierte el Informe Pericial ("*Inspection Report*")[13] de SuperMax. Abundaron que, las alegaciones que hizo el apelante en su Declaración Jurada, respecto a que las renovaciones que SuperMax efectuó, según establecidas en el "*Inspection Report*" no cumplen con la Ley ADA, fueron realizadas basándose en sus propias percepciones y especulaciones, sin contar con prueba pericial.

Luego, el 6 de marzo de 2023, el señor Figueroa Betancourt presentó una *Dúplica a la Réplica a Oposición a Moción de Sentencia*

---

[9] *Id.*, a las págs. 93-249.
[10] *Id.*, a las págs. 252-265.
[11] *Id.*, a las págs. 254-265.
[12] *Id.*, a las págs. 269-280.
[13] *Id.*, a las págs. 86-92.

*Sumaria Parcial.*[14] Recalcó que, al momento de radicar la Dúplica, SuperMax no había eliminado las barreras arquitectónicas, sino que lo que hizo fue agregar mesas delante de los mostradores objeto del litigio, las cuales no constituyen una facilidad equivalente.

De ahí, el 3 de octubre de 2023, el foro primario emitió *Sentencia Parcial Final* objeto de este recurso.[15] La misma fue notificada el 4 de octubre de 2023.[16] El foro primario declaró Ha Lugar la *Moción de Sentencia Sumaria Parcial* presentada por SuperMax y, en virtud de lo anterior, desestimó la *Demanda* contra esta parte, con perjuicio. El foro primario concluyó que "no existen hechos esenciales y pertinentes en controversia".[17] Por tanto, dispuso que, de conformidad a la Regla 42.2 de las Reglas de Procedimiento Civil,[18] se dictaba sentencia sin determinaciones de hecho ni de derecho.[19]

Inconforme, el 19 de octubre de 2023, el señor Figueroa Betancourt presentó una *Moción en Solicitud de Reconsideración.*[20] Por su parte, el 9 de noviembre de 2023, SuperMax presentó su *Oposición a Moción de Reconsideración.*[21] Finalmente, el 9 de noviembre de 2023, el foro primario emitió una *Resolución* mediante la cual declaró No Ha Lugar la solicitud de reconsideración, notificándose al día siguiente.[22]

Insatisfecho aún, el 11 de diciembre de 2023, el señor Figueroa Betancourt presentó un *Recurso de Apelación* mediante el cual esgrimió la comisión de los siguientes tres (3) errores:

> **PRIMERO:** Erró el TPI al expedir una Sentencia bajo el fundamento de que SuperMax realizó arreglos en los mostradores cuando estos no han sido modificados en su estructura.

---

[14] *Id.*, a las págs. 308-326.
[15] *Id.*, a las págs. 329-331.
[16] *Id.*, a las págs. 327-328.
[17] *Id.*, a la pág. 331.
[18] 32 LPRA Ap. V, R. 42.2.
[19] Apéndice del apelante, a la pág. 331.
[20] *Id.*, a las págs. 332-343.
[21] *Id.*, a las págs. 345-357.
[22] *Id.*, a las págs. 358-360.

**SEGUNDO:** Erró el TPI al expedir una *Sentencia* sin haber realizado el análisis correspondiente de la prueba aportada por SuperMax con respecto a si las mesas de color negro constituyen o no una "facilitación equivalente".

**TERCERO:** Erró el TPI al declarar Ha Lugar la solicitud de sentencia sumaria parcial presentada por SuperMax cuando en el caso de epígrafe persisten controversias fácticas y de derecho frente a los mostradores objeto de litigio y las mesas de color negro ubicadas por SuperMax en frente de estos.

Por su parte, el 12 de enero de 2024, la parte apelada presentó el *Alegato de la Parte Apelada*. Con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

## II

### A. Recurso de Apelación

La Regla 52.2 (a) de las Reglas de Procedimiento Civil[23], dispone que los recursos de apelación tienen que presentarse dentro de un término jurisdiccional de treinta (30) días desde el archivo en autos de copia de la notificación de la sentencia recurrida. Como es conocido, un plazo jurisdiccional es de carácter fatal. Ello quiere decir que no admite justa causa, es improrrogable, y que su incumplimiento es insubsanable.[24] La correcta notificación de una sentencia es una característica imprescindible del debido proceso judicial.[25] Como corolario de lo anterior, la Regla 13(A) del Reglamento de este Tribunal establece que:

> Las apelaciones contra sentencias dictadas en casos civiles por el Tribunal de Primera Instancia, se presentarán dentro del término jurisdiccional de treinta días contados desde el archivo en autos de una copia de la notificación de la sentencia.[26]
> [...]

No obstante, el término de treinta (30) días para acudir en alzada puede quedar interrumpido mediante la presentación

---

[23] 32 LPRA Ap. V, R. 52.2 (a).
[24] *Martínez, Inc. v. Abijoe Realty Corp.*, 151 DPR 1, 7 (2000). *Arriaga v. FSE*, 145 DPR 122, 131 (1998). *Loperena Irizarry v. ELA*, 106 DPR 357, 360 (1977).
[25] *Rodríguez Mora v. García Lloréns*, 147 DPR 305, 309 (1998).
[26] 4 LPRA Ap. XXII-B, R. 13 (A).

oportuna de una moción de reconsideración fundamentada.[27] En tal caso, el curso del término para apelar comienza a partir del archivo en autos copia de la notificación de la resolución que resuelve la moción.[28] Esto, a pesar de que se haya declarado la moción No Ha Lugar.

## B. La Sentencia Sumaria

Como es sabido, en nuestro ordenamiento, el mecanismo de la sentencia sumaria está regido por la Regla 36 de las Reglas de Procedimiento Civil[29], la cual desglosa los requisitos específicos con los que debe cumplir esta figura procesal.[30] El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que únicamente se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[31] Solamente debe ser dictada una sentencia sumaria "en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[32]

El propósito de la sentencia sumaria es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[33] En otras palabras, el tribunal procederá a dictar sentencia sumaria solo cuando esté claramente convencido que la vista evidenciaria es innecesaria.[34] Al no haber controversia sustancial y real sobre hechos materiales, sólo falta aplicar el derecho pertinente a la controversia.[35] Por lo tanto, una controversia en torno a hecho no

---

[27] 32 LPRA Ap. V, R. 47.
[28] *Id.*
[29] 32 LPRA Ap. V, R. 36.
[30] *Lugo Montalvo v. Sol Meliá Vacation,* 194 DPR 209, 224 (2015).
[31] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911 (1994).
[32] *Id. Corp. Presiding Bishop CJC of LDS v. Purcell,* 117 DPR 714, 720-721 (1986). *Medina v. M.S. & D. Química P.R., Inc.,* 135 DPR 716, 726 (1994). *Cuadrado Lugo v. Santiago Rodríguez,* 126 DPR 272, 279 (1990).
[33] *García Rivera et al. v. Enríquez,* 153 DPR 323, 337 (2001). *Pilot Life Ins. Co. v. Crespo Martínez,* 136 DPR 624, 632 (1994).
[34] *Nissen Holland v. Genthaller,* 172 DPR 503, 511 (2007).
[35] *García Rivera et al. v. Enríquez, supra.*

materiales, de existir, no impide que el tribunal dicte una sentencia por la vía sumaria.[36]

En lo pertinente al término para presentar una solicitud de sentencia sumaria, la Regla 36.2 de las Reglas de Procedimiento Civil dispone lo siguiente:

> Una parte contra la cual se haya formulado una reclamación podrá presentar, a partir de la fecha en que fue emplazado pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.[37]

En consonancia con lo anterior, el mecanismo de sentencia sumaria es un vehículo idóneo para descongestionar los calendarios judiciales y evitar el derroche de dinero y tiempo que implica la celebración de un juicio en su fondo.[38] La Regla 36.3 de las Reglas de Procedimiento Civil[39], detalla el procedimiento que deben seguir las partes al momento de solicitar que se dicte una sentencia sumaria a su favor. A esos efectos, establece que una solicitud al amparo de ésta deberá incluir: (i) una exposición breve de las alegaciones de las partes; (ii) los asuntos litigiosos o en controversia; (iii) la causa de acción, reclamación o parte respecto a la cual es solicitada la sentencia sumaria; (iv) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en

---

[36] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 DPR 945, 958 (1993).

[37] 32 LPRA Ap. V, R. 36.2.

[38] *Carpets & Rugs v. Tropical Reps.*, 175 DPR 615, 630 (2009). *Padín v. Rossi*, 100 DPR 259, 263 (1971). *William Pérez Vargas v. Office Depot/Office Max, Inc.*, 203 DPR 687, 699 (2019).

[39] 32 LPRA Ap. V. R. 36.3.

evidencia que se encuentre en el expediente del tribunal; (v) las razones por las cuales debe ser dictada la sentencia, argumentando el derecho aplicable; y, (vi) el remedio que debe ser concedido.[40]

Por su parte, la Reglas 36.3 inciso (a)(4) de las Reglas de Procedimiento Civil dispone:

> (a) La moción de sentencia sumaria se notificará a la parte contraria y contendrá lo siguiente: ...
>
> (4) una relación concisa, organizada y en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal...[41]

Por otro lado, la Regla 36.3 inciso (c) de las Reglas de Procedimiento Civil lee como sigue:

> (b) Cuando se presente una moción de sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica como lo haya hecho la parte promovente. De no hacerlo así, se dictará la sentencia sumaria en su contra si procede. [42]

Cumplidos estos requisitos, el inciso (e) de la Regla 36.3 de las Reglas de Procedimiento Civil establece que:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[43]

---

[40] 32 LPRA Ap. V. R. 36.3. *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018). *William Pérez Vargas v. Office Depot/Office Max, Inc.*, *supra*, 698.

[41] 32 LPRA Ap. V, R. 36.3 (a)(4).

[42] 32 LPRA Ap. V, R. 36.3 (c).

[43] 32 LPRA Ap. V, R. 36.3 (e). *García Rivera et al. v. Enríquez*, *supra*, 338. *Roldán Flores v. M. Cuebas,* 199 DPR 664, 676 (2018). *Lugo Montalvo v. Sol Meliá Vacation, supra*, 225. *SLG Zapata-Rivera v. J. F. Montalvo, supra*, 430.

Sin embargo, el solo hecho de no presentar evidencia que controvierta la presentada por la parte promovente no implica que necesariamente proceda la sentencia sumaria.[44]

Conforme ha resuelto el Tribunal Supremo, el demandante no puede descansar en las aseveraciones generales de su demanda, "sino que, a tenor con la Regla 36.5, estará obligada a demostrar que [tiene] prueba para sustanciar sus alegaciones".[45] Las meras afirmaciones no bastan.[46] "Como regla general, para derrotar una solicitud de sentencia sumaria la parte opositora debe presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente".[47]

Ahora bien, reiteradamente el Tribunal Supremo ha indicado que, el mecanismo de sentencia sumaria no es el apropiado para resolver casos en donde hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial.[48] De la misma manera, también ha dicho que "hay litigios y controversias que por la naturaleza de estos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de 'affidavits' o deposiciones".[49]

El Tribunal Supremo se expresó en cuanto al proceso de revisión de las sentencias sumarias y estableció que en dicho proceso el Tribunal de Apelaciones debe: (i) examinar *de novo* el

---

[44] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, *supra*, 913. *García Rivera et al. v. Enríquez*, *supra*. *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 DPR 538, 549 (1991). *Cuadrado Lugo v. Santiago Rodríguez*, *supra*, 281. *Corp. Presiding Bishop CJS of LDS v. Purcell*, *supra*, 721.

[45] *Flores v. Municipio de Caguas*, 114 DPR 521, 525 (1983). *Ramos Pérez v. Univisión*, 178 DPR 200, 215-216 (2010).

[46] *Id.*

[47] *Ramos Pérez v. Univisión*, *supra*, 215. *Roldán Flores v. M. Cuebas, Inc.*, *supra*, 677.

[48] *Elías y otros v. Chenet y otros*, 147 DPR 507, 521 (1999). *Soto v. Hotel Caribe Hilton*, 137 DPR 294, 301 (1994). *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 663 (2017).

[49] *Elías y otros v. Chenet y otros*, *supra*. *García López v. Méndez García*, 88 DPR 363, 380 (1963).

expediente y aplicar los criterios que la Regla 36 de las Reglas de Procedimiento Civil[50], y la jurisprudencia le exigen al foro primario; (ii) revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36 de las Reglas de Procedimiento Civil[51]; (iii) revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de las Reglas de Procedimiento Civil[52], de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; y, (iv) y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar de *novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[53]

En cuanto a la identificación de las controversias de hecho y de derecho, el Tribunal Supremo ha llamado la atención a lo siguiente:

> Aunque a veces no es fácil atisbar la diferencia, es vital que los tribunales distingan puntualmente entre lo que es un hecho y una conclusión de derecho. Un "hecho" en el campo jurídico es un acontecimiento o un comportamiento determinado y pertinente para la norma legal que se pretende aplicar. La norma jurídica se aplica al supuesto que constituye el "hecho" para arribar a determinada conclusión de derecho.
> [...]
> En todo caso debidamente instado ante un foro judicial habrá siempre una controversia de derecho presente y es precisamente esa controversia la que vienen los tribunales llamados a resolver. Si se comete el error de catalogar las controversias de derecho como controversias de hecho se eliminaría virtualmente el mecanismo de sentencia sumaria de nuestro ordenamiento procesal, pues este requiere expresamente la inexistencia de una controversia de hechos materiales para que un tribunal pueda dictar sentencia de esa forma.[54]

---

[50] 32 LPRA Ap. V, R. 36.
[51] 32 LPRA Ap. V, R. 36.
[52] 32 LPRA Ap. V, R. 36.4.
[53] *Roldán Flores v. M. Cuebas, Inc., supra*, 679. *Meléndez González v. M. Cuebas*, 193 DPR 100, 118-119 (2015).
[54] *Lugo Montalvo v. Sol Meliá Vacation, supra*, 226-227.

La sentencia sumaria no procederá en las instancias que: (i) existan hechos materiales y esenciales controvertidos; (ii) haya alegaciones afirmativas en la demanda que no han sido refutadas; (iii) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o, (iv) como cuestión de derecho, no proceda.[55] Además, al revisar la determinación del TPI respecto a una sentencia sumaria, estamos limitados de dos (2) maneras: (i) solo podemos considerar los documentos que se presentaron ante el foro de primera instancia; y, (ii) solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.[56] Las partes no pueden añadir en apelación exhibit[s], deposiciones o affidávit[s] que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo.[57] Mientras que el segundo limita la facultad del foro apelativo a revisar si en el caso ante su consideración existen controversias reales en cuanto a los hechos materiales, pero no puede adjudicarlos.[58] También, se ha aclarado que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia.[59]

**C. Regla 42.2 de las Reglas de Procedimiento Civil**

Como regla general, nuestro ordenamiento jurídico requiere que las sentencias dictadas por los tribunales cumplan con ciertas exigencias de forma.[60] Cónsono con lo anterior, la Regla 42.2 de las Reglas de Procedimiento Civil, dispone lo siguiente:

> En todos los pleitos, el tribunal especificará los hechos probados, consignará separadamente sus conclusiones de derecho y ordenará que se registre la sentencia que

---

[55] *SLG Fernández-Bernal v. RAD-MAN*, 208 DPR 310, 335 (2021).
[56] *Meléndez González v. M. Cuebas*, *supra*, 114.
[57] *Id.*
[58] *Id.*, 115.
[59] *Vera v. Bravo*, 161 DPR 308, 335 (2004).
[60] *Pérez Vargas v. Office Depot*, 203 DPR 687, 700 (2019).

corresponda. Al conceder o denegar *injunction* interlocutorios, el tribunal, de igual modo, consignará las determinaciones de hechos y conclusiones de derecho que constituyan los fundamentos de su resolución. Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. Las determinaciones de hechos de un comisionado especial, en tanto y en cuanto el tribunal las adopte, se considerarán como determinaciones de hechos del tribunal.

No será necesario especificar los hechos probados y consignar separadamente las conclusiones de derecho:
(a) al resolver mociones bajo las Reglas 10 ó 36.1 y 36.2, o al resolver cualquier otra moción, excepto lo dispuesto en la Regla 39.2;
(b) en casos de rebeldía;
(c) cuando las partes así lo estipulen, o
(d) cuando el tribunal así lo estime por la naturaleza de la causa de acción o el remedio concedido en la sentencia. En los casos en que se deniegue total o parcialmente una moción de sentencia sumaria, el tribunal determinará los hechos en conformidad con la Regla 36.4.[61]

### D. Ley ADA

El American with Disabilities Act (por sus siglas, ADA) es una ley de derechos civiles creada en el 1990 que prohíbe la discriminación contra las personas con discapacidades en varias áreas, incluido las instalaciones públicas. Dicha legislación, ofrece protecciones contra la discriminación a personas con discapacidades similares a las de la Ley de Derechos Civiles de 1964, que declaró ilegal la discriminación por motivos de raza, religión, sexo y origen nacional.

A tales efectos, el Título III de dicha legislación aborda lo relativo a entidades privadas que se consideran instalaciones públicas. Dentro de la categoría de instalaciones públicas se incluyen los supermercados.[62] A raíz de ello, el Título III requiere que todas las construcciones nuevas y modificaciones sean accesibles para personas con discapacidades. En el caso de las

---

[61] 32 LPRA Ap. V, R. 42.2.
[62] 42 USCA §12181 (7) (e).

instalaciones existentes, se deben eliminar las barreras a los servicios si es posible hacerlo fácilmente, sin mucha dificultad ni gastos.

A la luz de lo anterior, el propósito de la Ley ADA es garantizar que las personas con discapacidad tengan los mismos derechos y oportunidades que todas las demás personas. Así, pues, este título ordena a las instalaciones públicas que realicen "modificaciones razonables" en sus formas habituales de hacer las cosas cuando atienden a personas con discapacidades. Por lo tanto, a tenor con el Título III de la Ley ADA, ninguna persona puede ser discriminada por motivos de discapacidad con respecto al disfrute pleno e igualitario de los bienes, servicios, instalaciones, privilegios, ventajas o alojamiento por parte de cualquier persona que posea, arriende (o arrienda a), u opera una instalación pública.[63]

En 2008, el Americans with Disabilities Act Amendments Act (por sus siglas, ADAAA) se convirtió en ley y entró en vigor el 1 de enero de 2009. Entre dichas enmiendas, la ADAAA realizó una serie de cambios significativos en la definición de "discapacidad". Así, las cosas, se define "disability" o "discapacidad" con respecto a una persona como un impedimento físico o mental que limita sustancialmente una o más actividades importantes de la vida, un historial de dicho impedimento o que se considere que tiene dicho impedimento.[64] Por actividad importante de la vida se refiere a la que una persona promedio puede realizar con poca o ninguna dificultad. En lo que aquí respecta, las actividades de la vida incluyen, cuidarse a sí mismo, realizar tareas manuales, ver, oír, comer, dormir, caminar, pararse, levantar objetos, inclinarse,

---

[63] 42 USCA § 12182 (a).
[64] 42 USCA § 12102 (1).

hablar, respirar, aprender, leer, concentrarse, pensar, comunicarse y trabajar.[65]

Cónsono con lo anterior, algunas áreas a evaluar para la accesibilidad son los baños públicos y mostradores de servicio. Por su parte, en lo que respecta a las góndolas algunas soluciones alternativas pueden ser recuperar mercancías de estantes inaccesibles y/o reubicar actividades en lugares accesibles. No obstante, una instalación pública no está obligado a proporcionar ninguna ayuda o servicio auxiliar que resulte en una carga indebida. Mas bien, la ley promueve que las instalaciones públicas realicen "modificaciones razonables" en sus formas habituales de hacer las cosas cuando atienden a personas con discapacidades. De ese modo, una instalación pública debe modificar sus políticas, prácticas o procedimientos para evitar la discriminación a menos que la modificación altere fundamentalmente la naturaleza de su servicio, programa o actividad.[66]

El término utilizado por dicha legislación es "readily achievable", es decir fácilmente alcanzable. De esta forma, para determinar si una acción es fácilmente realizable, los factores a considerar incluyen: (A) la naturaleza y el costo de la acción necesaria; (B) los recursos financieros generales de la instalación o instalaciones involucradas en la acción, el número de personas empleadas, el efecto sobre los gastos y recursos, o el impacto de otra manera de dicha acción sobre la operación de la instalación; (C) los recursos financieros generales de la entidad cubierta, el tamaño total del negocio de una entidad cubierta con respecto al número de sus empleados, el número, tipo y ubicación de sus instalaciones; y, (D) el tipo de operación u operaciones de la entidad cubierta, incluyendo la composición, estructura y funciones de la fuerza

---

[65] 42 USCA § 12102 (2) (A).
[66] 42 USCA § 12182 (b) (2) (A) (ii).

laboral de dicha entidad, la separación geográfica, relación administrativa o fiscal de la instalación o instalaciones en cuestión con la entidad cubierta.[67]

Por consiguiente, cuando se van a realizar nuevas construcciones y modificaciones en instalaciones públicas aplica lo siguiente:

> [C]on respecto a una instalación o parte de la misma que sea alterada por, en nombre de o para el uso de un establecimiento de una manera que afecte o pueda afectar la usabilidad de la instalación o parte de la misma, la falta de realizar modificaciones de tal manera que, en la mayor medida posible, las partes modificadas de las instalaciones sean fácilmente accesibles y utilizables por personas con discapacidades, incluidas las personas que utilizan sillas de ruedas. Cuando la entidad esté llevando a cabo una alteración que afecte o pueda afectar la usabilidad o el acceso a un área de la instalación que contiene una función principal, la entidad también deberá realizar las modificaciones de tal manera que, en la máxima medida posible, la ruta de viaje al área modificada y los baños, teléfonos y fuentes que sirven al área modificada, sean fácilmente accesibles y utilizables por personas con discapacidades cuando dichas modificaciones en la ruta de viaje o en los baños, teléfonos y fuentes que sirven al área modificada sean no desproporcionada con respecto a las modificaciones generales en términos de costo y alcance.[68] (Traducción nuestra).

En lo concerniente a los remedios disponibles, se encuentra el uso me medidas cautelares como lo es el interdicto temporero, preliminar o permanente. De manera que, en el caso de violaciones de las secciones 12182(b)(2)(A)(iv) y la sección 12183(a) del Título III, las medidas cautelares incluirán una orden para modificar las instalaciones para que dichas instalaciones sean fácilmente accesibles y utilizables por las personas con discapacidades.[69] Cuando corresponda, las medidas cautelares también incluirán exigir el proveer ayuda o servicio auxiliar, la modificación de una política o proveer métodos alternativos.[70] Señalamos, que se ha

---

[67] 42 USCA §12181 (9).
[68]  42 USCA § 12183 (a) (2).
[69] 42 USCA § 12188 (a) (2). 28 CFR § 36.504 (a) (1) (i) (iii).
[70] 42 USCA § 12188 (a) (2). 28 CFR § 36.504 (a) (1) (ii).

establecido que la Ley ADA no autoriza un reclamo por daños monetarios.

**III**

En el r*ecurso de Apelación* ante nuestra consideración, el señor Figueroa Betancourt esbozó tres (3) errores que juzga cometió el foro primario. En síntesis, sostiene que la primera instancia judicial incidió al conceder el remedio solicitado por SuperMax y en consecuencia dictar una *Sentencia Parcial Final* mediante la cual desestimó la acción presentada por el señor Figueroa Betancourt.

Vemos que, el señor Figueroa Betancourt nos invita a concluir que el foro primario incidió tras dictar la referida *Sentencia Parcial Final*, bajo el fundamento de que SuperMax realizó arreglos en los mostradores sin que hubiesen sido modificados en su estructura; sin haber realizado el análisis correspondiente de la prueba aportada por SuperMax con respecto a si las mesas color negro constituían o no una "facilitación equivalente" y bajo la premisa de que en este caso existen controversias fácticas y de derecho frente a los mostradores objeto de litigio y de las mesas color negro. Tras juzgar que los errores esgrimidos pueden ser discutidos de manera conjunta, así obraremos. Adelantamos que no le asiste razón al apelante.

Según hemos expuesto, el mecanismo de la sentencia sumaria se encuentra regulado en la Regla 36 de las Reglas de Procedimiento Civil.[71] Sabido es que, la revisión por este tribunal intermedio de la determinación de un foro primario, en cuanto a una moción de sentencia sumaria y su correspondiente oposición acontece *de novo*. Siendo así, como cuestión de umbral, debemos revisar si la moción de sentencia sumaria, así como el escrito en oposición cumplen con los requisitos de forma que dispone la Regla 36.3 (a) y (b) de las

---

[71] 32 LPRA Ap. V, R. 36.

Reglas de Procedimiento Civil.[72] Luego de evaluadas la *Moción de Sentencia Sumaria Parcial* y la *Oposición a Moción de Sentencia Sumaria Parcial,* es la apreciación de este foro que ambos escritos cumplieron con los requisitos de la antes mencionada regla. Debemos recordar que, el propósito de la sentencia sumaria es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[73]

Nótese que, SuperMax es una cadena de supermercados que se entiende como un lugar de acomodo público, según dicho término está definido en la Ley ADA, por lo que está obligado a cumplir con las disposiciones del Título III de dicha legislación. SuperMax se encuentra ocupando el lugar en el Centro Comercial de Laguna Gardens desde el año 2009. Es decir, SuperMax no tenía control del local en el cual está ubicada la tienda antes del año 2009.

Destacamos que, es discriminatorio brindar a una persona, sobre la base de una discapacidad o discapacidades, directamente la oportunidad de participar o beneficiarse de un bien, servicio, instalación, privilegio, ventaja o alojamiento que no es igual al brindado a otras personas.[74] De la misma manera, resulta discriminatorio negarle la oportunidad de participar o beneficiarse por completo.[75] Igualmente, es discriminatorio proveerle con un bien, servicio, instalación, privilegio, ventaja o alojamiento que sea diferente o separado del proporcionado a otras personas.[76] Sin embargo, **no es discriminatorio si dicha acción es necesaria para proporcionarle a la persona un bien, servicio, instalación,**

---

[72] 32 LPRA Ap. V, R. 36.3 (a) y (b).
[73] *García Rivera et al. v. Enríquez, supra,* 337. *Pilot Life Ins. Co. v. Crespo Martínez, supra.*
[74] 42 USCA § 12182 (b) (1) (A) (ii).
[75] 42 USCA § 12182 (b) (1) (A) (i).
[76] 42 USCA § 12182 (b) (1) (A) (iii).

**privilegio, ventaja o alojamiento, u otra oportunidad que sea tan efectiva como la que se brinda a otras personas.**[77] (Énfasis suplido).

Entre las prohibiciones que indica la ley, se encuentra el discriminar al no eliminar barreras arquitectónicas y barreras de comunicación que son de naturaleza estructural en instalaciones existentes, donde dicha eliminación es fácilmente posible.[78] Por barreras arquitectónicas, se entiende que son obstáculos u otras características en el entorno construido que impiden que las personas con discapacidad obtengan acceso total y completo a los bienes y servicios que se brindan. De igual forma, entre las prohibiciones se encuentra el discriminar cuando una instalación pública puede demostrar que la eliminación de una barrera no es fácilmente alcanzable, pero no busca la manera de cómo hacer que dichos bienes, servicios, instalaciones, privilegios, ventajas o alojamientos estén disponibles a través de métodos alternativos, si dichos métodos son fácilmente alcanzables.[79]

Algunos ejemplos de medidas para eliminar barreras arquitectónicas incluyen, entre otras, las siguientes acciones: (i) instalación de rampas; (ii) reposicionar estantes; (iii) reorganizar mesas, sillas, máquinas expendedoras, estantes y otros muebles; (iv) instalación de barras de apoyo en los baños; (v) reorganizar la distribución del baño para aumentar el espacio de maniobra; (vi) aislar las tuberías de los lavabos debajo de estos para evitar quemaduras; (vii) instalar un asiento de inodoro elevado; y, (viii) reposicionar el dispensador de papel toalla en el baño.[80]

Apuntamos que, en el Informe Pericial ("*Inspection Report*") de SuperMax se expuso los siguiente:

---

[77] *Id.*
[78] 42 USCA § 12182 (b) (2) (A) (iv). 28 CFR § 36.304 (a).
[79] 42 USCA § 12182 (b) (2) (A) (v).
[80] 28 CFR § 36.304 (b). 28 CFR § 36.304 (c) (2) (3) (4).

Se proporcionó mobiliario de servicio con mostrador y letreros para acomodar sillas de ruedas en todas las áreas de servicio, incluido el mostrador de servicios generales[81], el quiosco de açai[82], la carnicería[83] y la panadería. El espacio libre típico tiene capacidad para una huella de 30" de ancho x 48" de largo con una altura máxima de 34" y un espacio libre mínimo de 27" desde el piso hasta la parte inferior del mostrador. (Traducción nuestra).

Además, se indicó que no había obstrucciones ni protuberancias en los pasillos. También, se señaló que se instaló una nueva rampa de acceso a los baños de acuerdo con las normas de la Ley ADA.[84] En lo concerniente al baño, se abundó que: (i) existía un espacio libre lateral de acceso frontal de la puerta de acuerdo con las normas de la Ley ADA;[85] (ii) que las tuberías del lavamanos fueron aisladas;[86] (iii) se logró un espacio libre para el inodoro de 60" x 56";[87] y, (iv) la ubicación y la altura de todas las barras de apoyo para inodoros cumplen con las normas de la Ley ADA.[88]

Puntualizamos que era responsabilidad del apelante demostrar una infracción y, en los casos en los que se alega un incumplimiento de las medidas detalladas prescritas por las directrices de la ADA, se requieren las medidas exactas. Luego de examinar con detenimiento los autos, incluyendo las posiciones de

---

[81] Hecho incontrovertido en *Moción de Sentencia Sumaria Parcial* Núm. 21: Frente al mostrador de servicio al cliente se colocó un mueble que tiene u timbre, un rótulo y mide treinta (30) pulgadas de ancho y treinta y cuatro (34) de alto.

[82] Hecho incontrovertido en *Moción de Sentencia Sumaria Parcial* Núm. 22: El mostrador ubicado entre el quiosco de açai y la repostería de SuperMax tiene una altura máxima de treinta y cuatro (34) pulgadas y un espacio libre mínimo de veintisiete (27) pulgadas desde el suelo hasta la parte inferior del mostrador.

[83] Hecho incontrovertido en *Moción de Sentencia Sumaria Parcial* Núm. 23: El mostrador colocado en la carnicería tiene un timbre; un rótulo, una altura máxima de treinta y cuatro (34) pulgadas y un espacio libre mínimo de veintisiete (27) pulgadas desde el suelo hasta la parte inferior del mostrador.

[84] Hechos incontrovertidos en *Moción de Sentencia Sumaria Parcial* Núm. 25: SuperMax renovó los baños y colocó rampas de acceso.

[85] Hechos incontrovertidos en *Moción de Sentencia Sumaria Parcial* Núm. 28: La entrada de los baños tiene una distancia lateral de aproximación frontal en cumplimiento con la Ley ADA.

[86] Hechos incontrovertidos en *Moción de Sentencia Sumaria Parcial* Núm. 29: Las tuberías de los baños de SuperMax están insuladas.

[87] Hechos incontrovertidos en *Moción de Sentencia Sumaria Parcial* Núm. 30: El espacio libre del inodoro es de 60" x 56".

[88] Hechos incontrovertidos en *Moción de Sentencia Sumaria Parcial* Núm. 31: Asimismo, SuperMax colocó barras de agarre en los baños que cumplen con las disposiciones de ADA.

las partes, no juzgamos que el foro primario hubiese cometido los errores esgrimidos. Un examen minucioso del expediente ante nuestra consideración nos ha llevado a la conclusión de que lo planteado por SuperMax se sostiene. Más aun, juzgamos que el señor Figueroa Betancourt no logró rebatir o controvertir los hechos propuestos por la parte apelada con la finalidad de poder colocar en posición al foro primario para que pudiese concluir que había una controversia no susceptible de ser atendida por la vía sumaria.

Es por todo lo anterior que, luego de haber estudiado con detenimiento la totalidad del expediente ante nuestra consideración y el derecho aplicable, razonamos que el foro apelado no se equivocó al determinar que no existían hechos esenciales y pertinentes en controversia y que, por lo anterior, procedía conceder el remedio solicitado por la vía sumaria, tal y cual actuado. En virtud de lo anterior, hemos acordado confirmar el dictamen apelado.

**IV**

Por los fundamentos que anteceden, se *confirma* la *Sentencia Parcial Final* apelada.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones